Angela Swan, #213793
THE LAW OFFICES OF ANGELA SWAN,
A PROFESSIONAL CORPORATION
21151 South Western Avenue, Suite 177
Torrance, CA 90501
Office Telephone: (310)755-2515
Facsimile: (310)878-0349
Email: aswan@angelaswanlaw.com

Attorney for Plaintiff MARIAH HOWARD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MARIAH HOWARD, an Individual,<br><br>Plaintiff,<br><br>and<br><br>LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY; and DOES 1 through 10, Inclusive,<br><br>Defendant(s). | CASE NO.:<br>Dept:<br>Judge:<br><br>**VERIFIED CIVIL COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

2. The United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs… pursuant to 28 U.S.C. § 1332 (a).

3. A substantial part of the events or omissions giving rise to this claim, complained herein, occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## THE PARTIES

4. MARIAH HOWARD ("Plaintiff"), a natural person, is a private individual within the meaning of California law and is a citizen of the State of California, and at all times relevant hereto a resident of the County of Los Angeles, State of California.

5. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY ("Defendant"), a government agency, doing business in the County of Los Angeles, within the laws of the State of California.

6. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associates or otherwise, of the Defendant(s) sued herein by fictitious names, and therefore sues them as Does 1 through 10, inclusive, pursuant to California Code of Civil Procedure, section 474. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and on the basis allege, that each of such fictitiously named Defendant is responsible in some manner for the wrongdoing alleged herein and/or liable to Plaintiff.

7. Plaintiff is informed and believe, and on the basis allege, that during the times mentioned herein, Defendant LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, and each of its agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-defendant(s) and were,

as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. August 28, 2018, Plaintiff had to catch the bus on Pico Blvd. and Bonnie Brea, going West on Pico Blvd., to an orthopedic appointment at Kaiser in Downey. Also, Plaintiff had her two (2) year old god-daughter with her that day.

9. The bus that Plaintiff intended to catch at 12:15 pm, drove passed she and her god-daughter; Plaintiff waved the bus driver down and she was passed up, anyway. As a result, Plaintiff was forced to take the next bus.

10. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff, not knowing that Plaintiff understands Spanish and she understood every word that was said.

11. Plaintiff placed $8.00 (Eight Dollars) in the fare slot expecting to receive a Day-Pass. After Defendant watched Plaintiff place $8.00 (Eight Dollars) in the fare slot, he informed her that he does not give Day-Passes. Plaintiff asked Defendant what is she suppose to do, when she has to take multiple buses to reach her destination. Defendant responded in Spanish, as though he could barely speak English; he began mumbling and began talking to a male passenger ("Passenger 1") in Spanish.

12. As Defendant is talking to Passenger 1, Passenger 1 began approaching Plaintiff, while pushing a cart. As the cart approached Plaintiff, she placed her foot on the cart to keep distance between them. Defendant threatened to call the Police on Plaintiff for being frustrated at paying for a Day-Pass and not receiving one, while calling Plaintiff a slang word for "Nigga" in Spanish.

13. Passenger 1, asked Defendant to pull over, at a non-designated bus stop, to let him off the bus, because he no longer wanted to be on the bus with Plaintiff. Immediately after Passenger 1 exited the bus, another passenger ("Passenger 2") ran from the back of

the bus and said "oh I'm not like that fool, I'll fuck you up" and began physically assaulting Plaintiff, and they began fighting. She pulled out a knife to stop the fighting and she asked Defendant to call the police.

14. Defendant responded as though he did not understand her request to call the Police. Plaintiff asked Defendant not to move the bus until the Police come; Defendant moved the bus, anyway, and never called the Police.

15. At this point, Plaintiff was standing with her back to the back door of the bus. For no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact.

16. As Plaintiff regained consciousness, she woke up to Passenger 2 beating her and using his knee to hit her in her mouth. In an effort to stop Passenger 2 from beating Plaintiff, Plaintiff bit Passenger 2 until he bled, and an older man who was on the bus began hitting Passenger 2 with his cane, while saying "get off her, get off her."

17. Defendant, finally pulled over at a LA Live bus-stop, and parked to help Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

18. Defendant began to pull off with Plaintiff's god-daughter still on the bus. Plaintiff was trying to get back on the bus to get her god-daughter, who was crying. Plaintiff began banging on the door saying, "open the door, my baby is still on the bus, open the door." Defendant refused to stop the bus; however, another passenger yelled "her baby is on the bus, her baby" and the bus stopped to allow Plaintiff to get her god-daughter off the bus.

19. Plaintiff called 911 and the Police arrived on the scene. The METRO Supervisor showed up and Plaintiff asked for the supervisor's name and he refused to provide his name; he said his name will be on the Police Report.

20. Plaintiff was taken via ambulance to Good Samaritan Hospital, Emergency Department. Plaintiff was examined, informed that she had a concussion, and told to follow-up with her primary care physician.

21. October 2018, Plaintiff began having brain seizures. Plaintiff takes seizure medication. Plaintiff lacks the ability to concentrate and loses her train of thought easily. As a result of this incident, Plaintiff's nerves are bad and she shakes a lot.

22. In addition, Plaintiff lost her number twenty (25) tooth due to Passenger 2, kneeing her in her mouth. Plaintiff once had a beautiful smile and now she is missing a tooth.

23. Plaintiff has been incapacitated and under the doctor's care, since the incident. After the incident, Plaintiff is afraid to ride the bus or even be in public due to discrimination.

24. Plaintiff filed a Claim with Defendant and she would contact Defendant every two (2) weeks for about four (4) months for a status and was informed by the Claim's Specialist the same information, repeatedly, "I'm working on it, give it some time; I'm investigating; can't locate documents; need more details." Plaintiff submitted a Claim twice and still has not obtain a status.

25. Plaintiff constantly stayed in close communication with her Claim's Specialist, until her injuries made it difficult for her to be as persistent. Eventually, Plaintiff retained an Attorney who contacted Defendant to obtain a status on Plaintiff's Claim and she has also been given the run-around; provided different phone numbers to contact, which have all resulted to nothing.

26. The Equality Act of 2019-2020: The Equality Act would provide consistent and explicit non-discrimination protections for LGBTQ people across key areas of life, including employment, housing, credit, education, public spaces and services, federally funded programs, and jury service. This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

## CAUSES OF ACTION

**COUNT I:**

**Violation of Title II of the Civil Right Act (PUBLIC ACCOMMODATIONS)**

27. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

28. 42 U.S.C. §2000a (a)All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin; amended— (1) in subsection (a), by inserting "sex (including sexual orientation and gender identity)," before "or national origin";...

29. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff, not knowing that Plaintiff understands Spanish and she understood every word that was said.

30. Plaintiff placed $8.00 (Eight Dollars) in the fare slot expecting to receive a Day-Pass. After Defendant watched Plaintiff place $8.00 (Eight Dollars) in the fare slot, he informed her that he does not give Day-Passes. Plaintiff asked what is she to do. Defendant responded in Spanish, as though he could barely speak English; he began mumbling and began talking to a male passenger ("Passenger 1") in Spanish.

31. As Defendant is talking to Passenger 1, Passenger 1 began approaching Plaintiff, while pushing a cart. As the cart approached Plaintiff, she placed her foot on the cart to keep distance between them. Defendant threatened to call the Police on Plaintiff for being frustrated, while calling Plaintiff a slang word for "Nigga" in Spanish.

32. Immediately after Passenger 1 exited the bus, another passenger ("Passenger 2") ran from the back of the bus and said "oh I'm not like that fool, I'll fuck you up" and began physically assaulting Plaintiff, and they began fighting. She pulled out a knife to stop the fight and she asked Defendant to call the police.

33. Defendant responded as though he did not understand her request to call the Police. Plaintiff asked Defendant not to move the bus until the Police come; Defendant moved the bus, anyway, and never called the Police.

34. At this point, Plaintiff was standing with her back to the back door of the bus. For no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact.

35. Defendant helped Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

36. The acts of Defendant created a danger for Plaintiff by subjecting her to extreme prejudicial and discriminatory treatment from other passengers, causing her to be beaten and obtain a brain injury, *inter alia.*

37. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

38. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendant is guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendant."

39. As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic, psychological, and emotional damages.

40. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

**COUNT II:**

**42 U.S. Code § 1983, Deprivation of Rights**

41. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

42. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

44. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff, not knowing that Plaintiff understands Spanish and she understood every word that was said.

45. Plaintiff placed $8.00 (Eight Dollars) in the fare slot expecting to receive a Day-Pass. After Defendant watched Plaintiff place $8.00 (Eight Dollars) in the fare slot, he informed her that he does not give Day-Passes. Plaintiff asked what is she to do. Defendant responded in Spanish, as though he could barely speak English; he began mumbling and began talking to a male passenger ("Passenger 1") in Spanish.

46. As Defendant is talking to Passenger 1, Passenger 1 began approaching Plaintiff, while pushing a cart. As the cart approached Plaintiff, she placed her foot on the cart to keep distance between them. Defendant threatened to call the Police on Plaintiff for being frustrated, while calling Plaintiff a slang word for "Nigga" in Spanish.

47. Immediately after Passenger 1 exited the bus, another passenger ("Passenger 2") ran from the back of the bus and said "oh I'm not like that fool, I'll fuck you up" and

began physically assaulting Plaintiff, and they began fighting. She pulled out a knife to stop the fight and she asked Defendant to call the police.

48. Defendant responded as though he did not understand her request to call the Police. Plaintiff asked Defendant not to move the bus until the Police come; Defendant moved the bus, anyway, and never called the Police.

49. At this point, Plaintiff was standing with her back to the back door of the bus. For no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact.

50. Defendant helped Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

51. The acts of Defendant created a danger for Plaintiff by subjecting her to extreme prejudicial and discriminatory treatment from other passengers, causing her to be beaten and obtain a brain injury, *inter alia.*

52. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

53. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendant is guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendant."

54. As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic, psychological, and emotional damages.

55. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

**COUNT III:**

**Harrassment**

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57. Harassment is when someone behaves in a way which offends you or makes you feel distressed, intimidated, or humiliated. This could be abusive comments or jokes, graffiti or physical and insulting gestures, and facial expressions. Harassment is a form of discrimination under the Equality Act 2019-2020 if it's because of or connected to one of these things: age, disability, gender reassignment, race, religion or belief, sex, and/or sexual orientation.

58. Defendant's abusive treatment towards Plaintiff violated Plaintiff's dignity and created an intimidating, hostile, degrading, humiliating and offensive environment for Plaintiff, while she was riding on the METRO bus, causing Plaintiff to get physically assaulted, resulting in a brain injury.

59. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff, not knowing that Plaintiff understands Spanish and she understood every word that was said.

60. Plaintiff placed $8.00 (Eight Dollars) in the fare slot expecting to receive a Day-Pass. After Defendant watched Plaintiff place $8.00 (Eight Dollars) in the fare slot, he informed her that he does not give Day-Passes. Plaintiff asked what is she to do. Defendant responded in Spanish, as though he could barely speak English; he began mumbling and began talking to a male passenger ("Passenger 1") in Spanish.

61. As Defendant is talking to Passenger 1, Passenger 1 began approaching Plaintiff, while pushing a cart. As the cart approached Plaintiff, she placed her foot on the cart to keep distance between them. Defendant threatened to call the Police on Plaintiff for being frustrated, while calling Plaintiff a slang word for "Nigga" in Spanish.

62. Immediately after Passenger 1 exited the bus, another passenger ("Passenger 2") ran from the back of the bus and said "oh I'm not like that fool, I'll fuck you up" and

began physically assaulting Plaintiff, and they began fighting. She pulled out a knife to stop the fight and she asked Defendant to call the police.

63. Defendant responded as though he did not understand her request to call the Police. Plaintiff asked Defendant not to move the bus until the Police come; Defendant moved the bus, anyway, and never called the Police.

64. At this point, Plaintiff was standing with her back to the back door of the bus. For no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact.

65. Defendant helped Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

66. The acts of Defendant created a danger for Plaintiff by subjecting her to extreme prejudicial and discriminatory treatment from other passengers, causing her to be beaten and obtain a brain injury, inter alia.

67. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

68. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendant is guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

69. As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic, psychological, and emotional damages.

70. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

**COUNT IV:**

**Assault**

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. Assault is defined as a purposeful act by one person which causes a reasonable apprehension of immediate harm or offensive contact to another person. Assault is known as an intentional tort when it is made the subject of a civil case.

73. To establish the claim of assault, a plaintiff must prove all the following elements: The defendant acted with the intention to cause harmful or offensive contact; Plaintiff reasonably believed that he was about to be touched in a harmful or offensive manner or threatened to touch in a harmful or an offensive manner; it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; Plaintiff did not consent to the defendant's conduct; Plaintiff was harmed; Defendant's conduct was a substantial factor in causing harm to the plaintiff.

74. In civil law, it is required that the defendant either meant to cause apprehension or that the defendant should have known that his conduct would cause apprehension to the plaintiff.

75. As the aforementioned "Facts Common to All Causes of Action", demonstrates, Defendant's conduct was intentional, as well as, he knew that his conduct would cause harm to Plaintiff, which he did not care.

76. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

77. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendant is guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

78. As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic, psychological, and emotional damages.

79. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

**COUNT V:**

**Intentional Infliction of Emotional Distress**

80. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Infliction of Emotional Distress must plead facts demonstrating (1) extreme and outrageous conduct by Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs' suffered severe or extreme emotional distress and (3) Plaintiff's injuries were actually and proximately caused by Defendants' outrageous conduct.

82. Defendant's carelessness in not exercising the laws that protect the people, where ordinary and reasonable care should have been exercised, and wasn't, which caused Plaintiff harm.

83. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff and instead of Defendant asking the passengers to stop or he'll call the Police, Defendant invited more negative discussion about Plaintiff.

84. Defendant made the harassment against Plaintiff intensify, by acting as though he did not understand Plaintiff when she talked in English and calling her a "nigga" in Spanish, out loud for all passengers to hear.

85. As Passenger 2 ran up to Plaintiff to assault her, Defendant refused to call the Police and watched the attack. As Plaintiff was at the back door, for no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out

of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact and sustained a brain injury.

86. Defendant helped Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

87. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

88. The conduct of Defendant was outrageous and goes beyond all bounds of human decency.

89. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered and continues to suffer severe and extreme emotional distress of such substantial quantity or enduring quality that no reasonable person in a civilized society should be expected to endure.

90. As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered economic, psychological, and emotional damages.

91. Plaintiff allege that such severe emotional distress has included without limitations embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

92. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendant is guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendants."

93. Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to Plaintiff and has been intentional, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.

94. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

**COUNT VI:**

**Negligent Infliction of Emotional Distress**

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Plaintiff must allege: (1) a legal duty to use due care (2) breach of that duty, (3) the breach as proximate cause of resulting injury and (4) damages.

97. Upon Plaintiff entering the bus, a passenger began making hateful gay slurs in Spanish towards Plaintiff. Defendant had a legal duty to use due care and call the Police, but instead, Defendant invited more negative discussion about Plaintiff, breaching that duty.

98. Defendant made the harassment against Plaintiff intensify, by acting as though he did not understand Plaintiff when she talked in English and calling her a "nigga" in Spanish, out loud for all passengers to hear.

99. As Passenger 2 ran up to Plaintiff to assault her, Defendant refused to call the Police and watched the attack. As Plaintiff was at the back door, for no reason, Defendant opened the back door, and Passenger 2, tackled Plaintiff, tackling Plaintiff out of the back door, causing Plaintiff to hit her head very hard on the concrete; she blacked-out from the impact and sustained a brain injury.

100. Defendant helped Passenger 2 getaway from the crime scene before the Police arrived. Defendant got off the bus to help Passenger 2 quickly get his bike off the bike-rack.

101. As a direct and proximate consequence of the acts of Defendant, Plaintiff has suffered and continues to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for other injuries.

102. Pursuant to California Civil Code §3294 "where is it proven by clear and convincing evidence that Defendants are guilty of oppression, fraud, or malice, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing Defendant."

103. Defendant did not care and he owed Plaintiff a Duty of Care and as a result of Defendant's breach of duty alleged herein, Plaintiff has suffered and continues to suffer physical, psychological, emotional, and economic damages.

104. Plaintiff is obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, will ask for the following for each Cause of Action to be awarded:

1. For Compensatory Damages in the amount of $100,000.00;
2. For General Damages in the amount of $200,000.00;
3. For Punitive Damages in the amount of $1,500,000.00;
4. For Attorney's Fees and Costs of this action; and
5. For such other relief as the Court deems just and proper.

Plaintiff hereby **demands a jury trial**.

Dated: August 27, 2020

Respectfully submitted,

THE LAW OFFICES OF ANGELA SWAN, APC

BY: ______________________

Angela Swan, Esq.
Attorney for Plaintiff

**VERIFICATION**

I am the Plaintiff in this action. I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES, and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Executed on August 27 › 2020 › at Los Angeles › California*

BY: MH Mariah Howard
MARIAH HOWARD, Plaintiff